Appellant. Ms. Wright, for the Appellant. Mr. Linares, for the Appellant. Good morning. May it please the Court. Lisa Wright, representing Mr. Anthony Ross. I'd like to reserve three minutes for rebuttal. Six years before SORNA's enactment, Mr. Ross was convicted of a misdemeanor sex offense and completed a four-month work-release sentence. Subsequently, in Reynolds v. United States, the Supreme Court held that, quote, SORNA's registration requirements do not apply to pre-act offenders, like Mr. Ross, until the AG Attorney General specifies that they do apply. Mr. Ross contends that his SORNA conviction for failure to register is invalid for two reasons. First, in leaving it to the prosecuting agency to decide whether SORNA would apply retroactively, and thus whether pre-SORNA offenders could be sent to jail for failing to register, Congress unconstitutionally delegated its legislative authority to the executive branch in violation of separation of powers principles. And second, even if the delegation to the Attorney General was constitutional, the Attorney General failed to validly specify SORNA applied to people like Mr. Ross until 2011, which was after the conduct, or more accurately, this failure to act, that was the basis for the crime in this case. First, as to the unconstitutional delegation of power, strange as it sounds, Congress, in creating the Federal crime that Mr. Ross was convicted of, simply failed to decide or to give any guidance on how to decide whether it applied to anyone on the day it was passed. It could have applied to no one, or it could have applied to, you know, a half a million people who had existing sex offenses. And Congress let the ---- not always involved a very long spectrum between 500,000 to zero, and additionally, the degree of application to any particular set of persons was within the Attorney General's remit. I think that's right. There's a vast delegation of power. And the government itself argued in Reynolds that Congress had not made such a vast delegation of its authority, but the Supreme Court ruled that it had, acknowledged there was a constitutional question present that whether the delegation was constitutional. Justices Scalia and Ginsburg expressed concern that such an extraordinary delegation was not constitutional, and specifically said, it's not entirely clear to me, this is Justice Scalia writing, Justice Ginsburg joining, that Congress can constitutionally leave it to the Attorney General to decide, with no statutory standard whatever governing his discretion, whether a criminal statute will or will not apply to certain individuals. That's a statement that there is in no intelligible principle stated, if there is no statutory standard whatever governing his discretion. Although other circuits have all rejected the separation of powers challenge, many of those cases were decided before Reynolds and before the passage I just quoted was stated. I'm sorry, the passage of? Before the, before Justice Scalia and Justice Ginsburg stated their belief that there was no statutory standard. The analysis set forth last year by Judge Gorsuch of the Tenth Circuit establishes convincingly that sworn delegation does indeed violate separation of powers. There's no intelligible principle or meaningful constraint. Well, the government's answer on the intelligible principle is that the basic message of the statute is, apply it up to the hilt. The sole purpose involved is a one-way purpose to make it more protective and more stringent, and so that is a standard. Does that take the extent of that? Well, but as we were saying that if there is discretion between applying it to no one and applying it to half a million people and choosing and picking, I don't know that there is a guidance. There's a boundary that you can either, it's somewhere in that spectrum, but there is no guidance on how to exercise discretion within that boundary. And there, I mean, that's, as I quoted Justice Scalia, there's just no statutory standard whatsoever. I mean, it can't be very clear what the standard to discretion is when the Attorney General didn't recognize the delegation at all. I mean, to say he was given clear guidance when he didn't even realize he'd been delegated to, you know, it's strange. So this is a truly unique situation. Congress created a federal crime where the executive both defines the reach and prosecutes those within the reach, and that's the sort of, creates the sort of threat to liberty that the separation of powers is designed to stop. It's a little odd, I'm just not sure what one does with this, where the delegation, as you said, Attorney General didn't think he had any delegation at the time. And the interim rule, the guidelines, preliminary, final, and even the final, final rule, through none of those times did the AG yet realize that the AG had a delegated decision to make. So it's odd, then, to think that we would go back, and the AG just said, here's how I read the statute as not only having an intelligible principle, but as tying my hands on this decision. So the AG thought there was all kinds of direction here. And so what do we do? I've never seen an anti-delegation when the executive didn't think anything had been delegated and thought hands were completely tied. Well, I think probably the Attorney General couldn't believe that that delegation would be made. Well, not to that, but you saw in the statute, where you said there's no intelligible principle, the AG here saw essentially handcuffs. Well, I think that the, obviously it went to the Supreme Court, there was a language that needed to be interpreted, and the Attorney General, I think, argued even in his brief in Reynolds that it made more sense, you know, really to interpret it the other way. And I think that's because it makes no sense to delegate this to the Attorney General. Right, but does it violate, how does one find a violation of the anti-delegation doctrine when the executive didn't think they had any delegation and the executive, well, you say there's no intelligible principle, the executive says, not only is there intelligent principles, but I am channeled into one decision by looking at the statute as a whole. Well, even if the Attorney General didn't realize that he was being delegated to, in the end, the law as it was applied to Mr. Bross was because of that delegation. I mean, it was because of the Attorney General's specification that he was held responsible, whether the Attorney General realized that or not. I guess that's the answer I would say to that. And so Congress's delegation to the Attorney General of the power to criminalize really not even Mr. Bross's actions, but his failure to act. Well, I think if Congress had said, we want this to apply to everybody who meets the definition of sex offender, and so made that retroactive determination, but just said, which is another way of reading D is, but how this is going to work implementation-wise is a mess, and it's going to maybe change from state to state, you figure it out. Would there be any delegation problem there? I don't think so, because that would be the implementation and interpretation that the Attorney General did a great job on in the SMART Guidelines, and really figured out a good way to operate it, and that was all great, but the fundamental specification was never provided. But then everything that's in the Guidelines, I mean, when my chair, I'm not saying you need to sign on to all of it, but everything that's in those Guidelines would at least be consistent with any delegation principles. Those would all be the kinds of decisions the AG can make, because remember the AG didn't specify there. The AG said Congress specified. So is there anything in the final Guidelines, their content, that exceeds the boundaries of a constitutional delegation? Other than the supposed specification, which we don't see in there. Right, right. Apart from that, just retroactive or not. I don't think so, because that's all part of the background and general principles, and certain things must be noted, I believe the Guidelines say, and that Congress has already done this. And then it goes into the substance of the Guidelines, which interpret and implement. So it's talking about how you're going to apply this. But, Michelle, why isn't it a specification in the SMART Guidelines where the Attorney General said, the applicability of the SORNA requirements is not limited to sex offenders whose predicate sex offense convictions occur following a jurisdiction's implementation of a conforming registration program. In other words, it applies prior to a jurisdiction's implementation and presumably prior to the enactment as well. Well, the next sentence is really the qualifying sentence there. It explains that that's because, rather, SORNA's requirements took effect when SORNA was enacted on July 27, 2006, and they have applied since that time to all sex offenders. So unlike in the interim rule, and unlike in the final rule, where the Attorney General says very clearly, we think Congress did it, I think I did it in the interim rule, but I'm doing it again, and used the word specify, cited the 113D in both the interim rule and the final rule here, it does not do that. It does not say I'm specifying. But that's a very formal argument. I mean, belt, suspenders, and another belt, you know, it almost becomes awkward for the Attorney General to say, I thought it was in the statute, it's in a rule, let me just tell you here, I still adhere to that view. I mean, there's no question in the mind of any member of the public that this is intended to apply to pre-implementation offenders. I don't think it's intended to make it retroactive, which is what's required, that it makes it retroactive. Do you think anyone reading this would think, oh, yes, and if the statute doesn't apply it by its own force, and if the interim guideline wasn't supported by good cause to bypass the notice and comment, the Attorney General here might be changing his mind? Well, he does walk back, you know, between the proposed guideline and the final guidelines. He does change. The only thing that gets changed in the retroactivity section is that sort of critical passage that we're talking about because in the proposed guideline, the Attorney General does cite or talk about his own interim rule and says SORNA's requirements apply to all sex offenders, including those whose convictions predate. The Attorney General has so provided in 28 CFR Part 72, pursuant to the authority under SORNA 113D to specify the applicability of the requirements of SORNA. He says all that. That's what he says in the proposed guideline. But then when he gets to the final guideline, he walks back from that and says, Oh, no, it's always applied. Those are actually two different dates. I mean, the proposed guideline, it's saying I specified it, and it also cites the preamble to the interim rule, which does say that Congress made it that way all along. But it's interesting that in the final guideline, he just says he kind of steps back from responsibility and says Congress did this. I don't know if that's stepping back or stepping forward. I mean, it's a little bit cleaner. It's saying, you know, if there's any doubt, I'm not pointing only to the interim guidelines. I'm pointing all the way back to the statute, and that's my specification. Well, he doesn't realize he has a choice, so it's a flawed specification at best. What does specify mean? That's not our normal APA agency decision-making term. It's an odd term. I agree. I mean, I think it means, you know, make, declare. I mean, you know, he has to take action. Yeah, and he does that in the interim rule. And, you know, as far as the awkwardness, I mean, the final rule. I guess what I'm trying to say is that specify just means make explicit, and it doesn't by itself include make a judgment. I think he has to make a choice, because that's what the Supreme Court says in Reynolds. That's what we're told in Reynolds. Yeah, if it weren't for Reynolds. But, yes, in Reynolds, they're like, he has to decide and do it. He has to actually do it. And so that's what's missing in the SMART guidelines. Whereas in the final rule, I mean, you know, it may be awkward, but it's, you know, the Attorney General does a very transparent thing. He says, this is what I thought, then I thought this, then I thought this. And now there's this, you know, this is still all pre-Reynolds, but he goes ahead and does do the second pair of suspenders and says that's what he's doing. And interestingly, in that final rule, doesn't adopt. He could easily have said, I did it in the SMART guidelines. Yeah, but this is not an APA case. And so what I'm trying to figure out is, for purposes of your client and others similarly positioned, does a statute, when it says specify, entitle them, whatever's going on in the head of the AG, to anything more than notice? Is it a required notification by the AG, or is it from their perspective? What did the statute say they needed, they were entitled to before the act would apply to them? Is it just this concept of notice? Well, they just don't have to register. They just don't have to register. Well, they all have to register under pre-existing systems. Correct. Not under SORNA, but like, you know, your registration might have expired, for example. I think Mr. Ross's registration was within months of expiring when this offense was charged. So he would have been free of any registration duty at all. Well, unless the state imposed its own. But I mean, his state duty was only 10 years. No, but could a state then post SORNA go, huh, Congress is right, good idea, we need to, our time limits were too short, we're going to change that? Yeah, I mean, I guess that could happen, but I mean, as far as what the effect of SORNA is on Mr. Ross and whether it's a notice question or not, no, I think it's much more fundamental than that. Does he, is he subject to its requirements, which is that he must go and do X, Y, and Z, and if he doesn't, he goes to jail. That's right. The Attorney General had the comments that were submitted following the interim regulation when the SMART guidelines were proposed and when they were adopted. Is there anything that was submitted in response to the interim rule that raised any substantive issues that were not addressed in the SMART guidelines? I have not read all the comments. I think from the Attorney General, you can, first of all, he says in the interim rule, essentially my hands are tied. So, I mean, it's our view that there was, that the people who commented were not the sophisticated stakeholders. They were the people... But that's not his fault. That's the action of the Supreme Court. I mean, so that seems like that goes to harmlessness. I mean, it's... I guess it seems important to your claim that doesn't it turn on whether there was a kind of bait-and-switch in terms of when the specification was being made and that had it been clear in the SMART guidelines that they were disposing of this question that your client and people similarly situated would have commented and perhaps influenced the final guidelines? I don't think that's necessarily required. And I think all the courts, almost all the courts that have looked at the harm questions, I guess the way I'm looking at it, have said that would eviscerate the rule and make it completely toothless. So your argument is just that there was not a specification period. And that's my argument with the SMART guidelines primarily, is, you know, if you just look at it, what he did and how he said it, it's pretty clear that he does not intend the SMART guidelines to be a specification, to be taking action. And it's only later in the final rule where he says, I think I maybe need to take action here. And he did that. And at that point, I think the problem is solved, but that was, you know, too late to catch Mr. Ross in the net, in this one, in net. If the court has no further questions, I'd like to sort of save some time for rebuttal. Did you want, I mean, because you spent your time on delegation, did you want to talk about the final guidelines? I mean, some of that's been wrapped up a little bit in what we've talked about. Did you feel like you've, just so we don't have to be raising something on rebuttal that they don't get a chance to answer to? Yeah, I mean, I sort of want to make clear that there's sort of two different arguments. My basic argument is that even if the delegation of the power was constitutional, because the AG didn't realize that he had the power, failed to validly exercise it, and there was really the two mistakes. One, he thought that there was no rule needed, so in issuing the interim rule, he failed to take the requirements seriously, didn't, you know, didn't have good cause, and sort of asserted it without it. And then second, you know, failed to limit this error to a brief window like he could have. He could have issued the final rules at any time after he received those comments and waited, and that mistake was, I think, again, because he was wrongly confident of his good cause decision. So I think that there was, you know, he was closed-minded, and it was somewhat appropriate, given his understanding of what was going on, that he was just wrong. And it's, you know, it's unfortunate for what they were trying to accomplish, but they failed to accomplish it. The good cause, I think, you know, five circuits have agreed that there's no good cause. And when there's an utter failure like this to comply with a notice requirement, the Court has to be certain, and there's certainly no certainty here as to what would have occurred if the Attorney General had, you know, for example, been made to realize that this really was his decision. You know, who knows what? I mean, we really don't know what that would have happened if he had understood that it was his decision, which he never did understand throughout any of this. And the good cause reasons that were given, you know, I'd like to say also that, you know, it's sort of ironic that the Attorney General was wrong. You said we don't know what would have happened if he understood this was his decision. Don't we, I mean, I thought you, that wasn't really the government of your argument, because we do know what would have happened. He would have probably acted much quicker in the interim rule and finalized it. Well, once you're locked in, I think you can't really look back and say exactly what would have happened, that you would have done the same thing if you hadn't already locked yourself in, you know, and been prosecuting people and putting people in jail and all these things. And now, four years later, come to a different outcome. But the point I want to make about it, just the good cause, I've made all the arguments in the brief about why his reasons weren't good cause, but it's just sort of ironic that the government treated this like an emergency when, in fact, he didn't think it was necessary at all. But that makes perfect sense. I mean, it undermines your position. You say we don't know what would have happened. I assume you're suggesting that he might have not fully exercised the specification power to the maximum applicability, but even under the position the government took in Reynolds, I mean, the government's position was that was precisely the power that the attorney general had to roll back to any degree he thought was significant the applicability to pre-act offenders. He knew he had that authority, and he didn't exercise it. So isn't the converse of that that it's very clear, even on this sort of counterfactual record, that the attorney general intended the fullest practicable applicability to pre-act offenders? I mean, he did make some substantive changes in response to comments about, like, the application to juveniles and going forward and some other things. I mean, he was open to realizing that it doesn't have to apply to every single person he could possibly apply to. I mean, Mr. Ross is a misdemeanor. You know, that would be a potential line that it might just be that the practical difficulties of doing this are so great and that it's just not worth it to impose this on the States. There's too much pushback. That's the sort of thing that happened with the juveniles. So I do think that there's possible it's possible that with no proper notes and comment and really, harmlessness is generally only relied on when the dispensing doesn't undermine the purpose of the procedure. And here, the purpose of the procedure was undermined. There weren't the comments were not made and they weren't considered at the time the rule was issued. Thank you. Good morning. May it please the court. Dan Lenners for the United States. As the court appears to have recognized appellant's view that the final SMART guidelines did not properly specify SORNA's retroactivity depends upon a highly formulaic view of what constitutes specification. There's no doubt that... What does specify mean? What did it require of the AG? It required the Attorney General to say that the that SORNA applies retroactively. Just to make that announcement? Yes, Your Honor, which the Attorney General did in both the... Did it require the AG to make a judgment before making that announcement? Your Honor, even if... I don't believe it does, but even if it did, the Attorney General did explain his judgment. Doesn't Reynolds say that the AG has to make this judgment? And the Attorney General repeatedly made the judgment that SORNA... Where did the AG make the... As I read the final guidelines in the final rule, final guidelines are explicit. Not my call. That's what the AG says. It's not my call. Can't quibble with Congress. Not my call. This is retroactive. That's not making a judgment. Your Honor, no court of appeals to have addressed that argument has accepted that proposition. They've all found that the quality of comments the Attorney General received and the Attorney General's thoughtful response to those comments show that the Attorney General... The thoughtful response to the comment about whether this should be retroactive, not the details of implementation, but whether this should be retroactive was not my call, not my decision to make. How can that possibly reflect him making an independent judgment as the Reynolds Supreme Court decision required? I disagree that that is either the tone or the effect of the Attorney General's response and the final SMART guidelines. The Attorney General understood Congress had made it retroactive, but in the initial rule explained that were he to exercise his judgment, he would likewise make it fully retroactive. No. I'm on the final guidelines here, 38036. Comments. Talking about comments received on retroactivity. Do not establish that this legislative judgment is wrong and in any event could not be accepted in formulation of guidelines. When all I'm supposed to do is interpret and implement. Not to second-guess the legislative policies they embody. I can't imagine that any clearer statement of this is not my decision to make. You're asking me to second-guess the legislative policies and decide that this legislative judgment is wrong. So what do I do with that language? That's talking about legislative judgment and legislative policies. It's not saying that Congress mandated that it apply retroactively. It's talking about the underlying policies and the Attorney General's agreement with those policies. What underlying policies? Not to second-guess them. This is under the heading retroactivity. Yes, Your Honor. The policy embodied by SORNA to protect the public from sex offenders and to implement a nationwide registration scheme. And the Attorney General goes on later to discuss comments about its retroactivity being unconstitutional or unfair. And it addressed both of those questions, saying it would neither violate the Constitution and that fairness does not require that an offender be able to anticipate all future regulatory measures. But doesn't that really support Judge Millett's point in that if Congress has made the choice and there are objections, the Attorney General is taking up the constitutional objection because that actually could affect whether the executive with the take-care duty should or shouldn't read it this way. But everything else is all premised. I mean, this retroactivity is really the two different rules here. We have the interim rule and we have the SMART guidelines. The interim rule seems to be speaking to the offender. The SMART guidelines are speaking to the jurisdictions. And there's a whole separate question about applicability to pre-act offenders where it concerns the jurisdictions. And there's a lot of commentary that they say, how are we going to identify these people? This is a huge burden on us. How do we prioritize? What do we do? And the SMART guidelines speak to that. But I don't see the SMART guidelines also picking up, even looking at it charitably, the project of the interim guideline and saying, and by the way, we're finalizing that too. It doesn't get finalized until much later. So if all the action in the SMART guidelines is about jurisdictional, jurisdictions compliance, and the so-called retroactivity, the applicability to pre-act offenders that's addressed there, is how the jurisdictions work with that. I don't see a specification for that reason either. I mean, that's another reason why it's questionable whether there really was a specification in those guidelines. Well, the guidelines address issues beyond constitutionality. They address the fairness issue as well, which would go to the Attorney General's judgment about whether SORNA should apply retroactively to all offenders. As to Your Honor's second concern, there's no suggestion in the act that specifications need to be aimed at a particular audience. And in fact, the jurisdictions understanding their responsibilities for these pre-act offenders and who they needed to look for and how they needed to look for was based on who SORNA would apply to in the first instance. And the Attorney General makes clear, and the guidelines are built upon the proposition that SORNA applies to all pre-act offenders. And then the Attorney General tells the jurisdictions how to implement that broad requirement in a way that would satisfy the regulations. Isn't it just the whole concept of considering comments and making a decision only works if you actually have the authority to make the decision? If one of your colleagues really wanted a pay raise and came to you and said, I'd like a pay raise, and you go, I think your work is great, but I don't have that authority. You've got to talk to Ms. X. And the person says, no, no, no, here's all my information, here's all my paperwork, here's all my arguments for why I should have a pay raise. How much are you going to focus on that? Look, I've got no quibble with you, but I'm not going to spend my time reading and studying this because it's not my call. You've got to take it to the other person down the hall. And how do we know the AG would have given any open-minded consideration to comments about whether this should be retroactive or not? And to whom, when the AG said, Congress has already decided that. Who's going to spend time concentrating on that? We know that because that's what the Attorney General did in the final guidelines. We know that because of the Boards of Appeals. When you say what he did, what was that? He considered and responded to comments, and in the final ruling... Where does he say that even if... Where does he say, even if Congress hadn't made this call, I would make the same one? It's implicit in this discussion of fairness. He never says Congress... He does not say, Congress decided this matter full stop. Congress, he believed, had decided the matter, but he goes on to address these other circumstances. And, in fact, in the final rule... I think he says... I guess where I'm having trouble is I think he says Congress made this call full stop in the quote I gave to you, and later in the rule he keeps talking about the required retroactive application. The Attorney General himself understood the final SMART guidelines to have addressed the comments on retroactivity. In the final rule, the Attorney General said the public comments on this interim rule were similar to comments received on the portions of the proposed SORNA guidelines addressing SORNA's application to sex offenders with convictions predating SORNA's enactment. Accordingly, as discussed below, the preamble to the final SORNA guidelines and various features of the guidelines themselves address the concerns raised by the comments on the interim rule. Where are you reading from? I'm reading from the final rule, Your Honor. This is 75 Fed Ray 81850. The first paragraph below says... But that's the final rule after Mr. Ross's conviction. Right. The Attorney General... I'm sorry. The Attorney General in that paragraph is saying the comments I received in response to the interim rule were similar to those I received about the SMART guidelines, and the response I gave in the final SMART guidelines addresses those concerns. That's what the Attorney General himself understood. So even by the time of the... Wasn't the final rule itself pre-Reynolds? It was, Your Honor, but the Attorney General understood the final guidelines to have responded to comments about retroactivity. He made that clear. Right, and the response was, I can't second-guess the legislative policies or determine that this legislative judgment is wrong. That's not how he explains it in the final rule. He says the preamble and various features of the guidelines themselves address the concerns raised by the comments on the interim rule. Yeah, and the answer to those concerns is, not my job. Your Honor, the other person... That's a good answer. It's an answer. It's a good answer. It doesn't mean that he ignored the comments. He gave them an answer. It's not an answer. It was not his answer, Your Honor. And as the Eighth Circuit found, that contention seriously underestimates the quantity of public comments concerning the application of SORNA's requirements. Again, those comments about the application were implementation. They were, how are we going to implement this? How is this going to work? What's the timing? How is this going to intersect with the state systems? I have no doubt that the AG thought he had discretion to deal with that, was explicit about that, talks about the authority to interpret and implement, so he acknowledges that authority. But I don't see how the AG addressing comments that address, all right, rubber meets the road, how is this going to work, or any evidence that the AG thought he had independently made the fundamental decision about retroactivity or not. That's what I'm having trouble understanding. I understand what you're saying, Your Honor, but I disagree with that reading of the Attorney General's statements in the final guidelines about retroactivity. You should read the language in the final guideline, not the final rule, because that makes us worried, because that postdated the conduct here. We're in the final guideline. What language? The same language Your Honor quoted, that comments do not establish that the legislative judgment is wrong. Legislative judgment? So that doesn't, that's just going back to the proposition Congress decided. And not to second-guess the legislative policies they embody. It was looking at the legislative policies underlying the statute. I'm sorry to interrupt, but I think the burden is a little bit different. If the Attorney General is reading the statute to say Congress has made this determination, yes, I have the authority to roll it back, because that's the position of the Justice Department and the Supreme Court and Reynolds. Yes, I have the authority to roll it back, but given my understanding that Congress made that judgment and my question is whether to trump that or push back on that, I'm deciding I'm not going to do that. Wouldn't it be a different question if the burden were, if the Attorney General understood the burden was on him in the first instance to decide whether and to what extent to apply the act to pre-act offenders? It seems like it's a very different question. The Attorney General may have approached the way he phrased the guidelines differently, but I don't think it's a different question for this Court as to whether the Attorney General used his judgment, and he said he wasn't going to suck. There have been a lot of cases where, I mean, Trill, I think, is the leading case. The agency thinks that it's bound by the statute. We said you were wrong on that. You actually have discretion here. Go out and exercise it. It seems to me this fits Trill very closely. But the Attorney General made clear in the interim rule that even though he thought he was bound by the statute, he was going to make a judgment notwithstanding being bound, and that judgment was to apply it. Just a few months later, he promulgated the interim SMART guidelines, which reflected the same judgment. And then he finalized the SMART guidelines, which, again, reflected the same judgment that SORNA applied retroactively to all sex offenders. What's the best clause for your position here at this passage we're looking at? I think the best clause in that particular passage is not to second-guess the legislative policies they embody. The Attorney General is looking to the policies underlying the law, not to the law requiring an outcome. I'm sorry, are you looking at the final SMART guidelines? Is that where you are now? I think it's the quote that I was doing. Yes, top of page 10. That sounds like the statute, which embodies policies. I'm not going to second-guess them. It doesn't sound to me like someone who sees himself as exercising independent judgment. He's using his judgment not to second-guess the policies, Your Honor. And later on, the Attorney General goes on to discuss second-guessing policies to exercise his discretion to choose among the 500,000 possible people as to how far he will go in pushing retroactive application. It's not a second-guess if you have the first-guess. I would merely point, Your Honor, to the fact that no other court of appeals has accepted the Court's proposition that five courts of appeals are unanimous, that these guidelines properly specify in compliance with the APA's notice and comment requirements. And the Attorney General himself, as evidenced by the final rule, believed that these comments sufficiently addressed, sufficiently considered and addressed the – that the final SMART guidelines sufficiently considered and addressed the comments received about Sorna's retroactivity. It's all just a little hard to reconcile with not just this, but we have the S.G. filing briefs in the Supreme Court in Reynolds stating the official position of the United States, and that was that as of the date of that brief, this is not the A.G.'s call. This is not the A.G.'s job. But it doesn't – even if the A.G. understood himself to be bound, it doesn't mean that he could not have, at the same time, looked at the policy reasons for not applying Sorna retroactively and rejected those policy reasons as he made clear in the final. Is there any case where we've said – Judge Williams raised cases where the agency said, not my call, and we said, wrong, now go make the call. Is there one of those cases that you're aware of where the agency said, not my call, and we said, well, but you discussed some comments. So even though you didn't think you could make the call, how you responded to comments is good enough. Do you have any case that fits that model? I don't, Your Honor. For that proposition, we relied on chemical waste management. Right, but chemical waste, the agency knew it was its decision. It had made up its mind, but it knew it was its decision. Right, and that goes to whether they had fair notice and whether it was complying with the APA. And so here, for the same reasons that any defendant had fair notice that Sorna applied retroactively and would understand to submit comments to the interim smart guidelines. No, they might have had fair notice, but as Ms. Wright explained, there was actually a triggering judgment here with legal consequence as to whether or not it was going to apply to his conduct. So it wasn't just notice, but then you actually had to have that triggering decision by the Attorney General independently by the Attorney General, which is what's missing. So I understand your notice point. I understand your point, Your Honor, and the Attorney General did not say, I am bound by this, full stop. He said, I believe Congress has decided it and then explained why his judgment would be the same. And he understood himself to have made that judgment call, or at least made that explanation as to why the policy would remain the same in the final rule where he refers back to the final smart guidelines. In the smart guidelines, Mr. Leonard, it's striking that they refer to pre-implementation offenders and don't explicitly refer to pre-act offenders. Is it possible that if there is a specification there that it's only with respect to pre-implementation offenders and not pre-act offenders? I'm sorry, what is Your Honor looking at? The smart guideline, which only specifies with respect to pre-implementation offenders. Because subsection D says AG makes a call on both retroactive offenders and non-retroactive offenders pre-implementation in the state. No, Your Honor, the Attorney General certainly understands that the final guidelines to make SORNA apply to all pre-act offenders. The interim rule, or excuse me, the proposed guidelines made that clear. And in the final guidelines, the Attorney General said, for the reasons I've explained on the same page we've been looking at, no changes have been made in the final guidelines relating to retroactivity based on the comments alleging an adverse effect on sex offenders. So the Attorney General understood that the language Your Honor is pointing at under section C, retroactivity, to be making SORNA applicable to all pre-act offenders. And in fact, the basis of the guidelines explains to jurisdictions how they're supposed to implement that rule for offenders whose convictions predate the act, not simply offenders whose convictions predate the registration program, although those would be the registration program offenders would be a larger group because it would be both offenders who predate the act and those who fall in between when the act was passed and when the conforming registration program was enacted. All right, thank you very much. Thank you. Thank you. With all due respect to the five circuits, I think that it's pretty clear that they're wrong because if you compare what the Attorney General said in the final SMART guidelines with what he said in the final rule, it's just a very, very different approach. There's a large contrast between the two. But that theory would then mean not just your client, but even the final rule that's out there now wouldn't have to, it still would not be triggered for anybody retroactively as of today because the final rule was pre-Reynolds as well as the final guidelines. Or do you agree the final rule was good enough? That's a hard question, but I think that because the way he goes through it and says this is another suspender and in the final rule he really says, I'm now treating this, I'm going to treat this as if I have the discretion. Where does he say that? Because he surely was telling Supreme Court he didn't have discretion. No, he said hypothetically, if I have the discretion. What line do you think? Well, does that count? Well, that's the question, but it's a lot better than what he said in the guidelines. But is it good enough? Well, you know, for Mr. Ross, that obviously does not affect him, but I think that might be a question another day. But he does say. . . No, I don't think it is. I think if we buy this rationale that I don't know how we would distinguish, so I'm not sure I can make a pass on it, even if you and your client can. I mean, I think that certainly the fact that he thinks he can't do it, that is the big problem, and that problem exists all through the whole thing. The magic language in the final rule, do you think, is the magic language? Let me make sure this is a very fat document. He talks about many of the commenters assumed Attorney General made a discretionary decision. I'm sorry, what page are you on? I think page 2. . . Let me look, let me pick the final. Sorry, I've got the actual Federal Register.  I don't know. I interpret what he's saying in the final rule. I'm sorry, I just want to make sure I'm on the same page. Page 2 of that last little section. And which heading are you on, summary of contents or misunderstandings? Well, above summary of contents, he kind of goes through the history, and he says, you know, he's saying Congress did it, I believe I did it, and he says the SMART Guidelines state, he uses the word specify with respect to the interim rules, but when he talks about the guidelines, he says they, like the interim rules, state. This is the second paragraph. What does the paragraph begin with? Following the publication of the interim rule. Towards the bottom there, he says the guidelines, like the interim rules, state. And he, that's a contrast from saying specify. And then he points out, I think in the next paragraph, that the Sixth Circuit, having said, he said. Now, that's just sort of fussing about the interim rule there, right? That's just a fight over the interim rule. I think when he talks about UTESH in the next paragraph, in the United States UTESH, he's talking about whether the guidelines independently are a valid final rule. And he says, you know, unlike where he said Congress did it and I did it in the interim rule, when it comes to the SMART Guidelines, he doesn't say I did it. He says they stated. And then he says that the Sixth Circuit thinks that that was a valid final rule, and this rulemaking reflects no disagreement with that conclusion. Or that no disagreement with that court's conclusion, that's when it does not apply retroactively of its own course? Is that what you mean? Reflects no disagreement with the conclusion, but rather aims to eliminate any possible uncertainty or dispute by finalizing the interim rule. Now, if he, you know, obviously the final rule has already been, it's been finalized. This publication does not reflect agreement with the conclusions of an earlier decision of the Sixth Circuit that the interim rule was invalid and that SORNA does not apply retroactively of its own force. Right. So, disagreeing that it's not retroactive of its own force. Right. That's hard to think that that's evidence of a decision that he was making independently. Wouldn't your best citation be further up in the paragraph following the supplementary information paragraph, the one that begins, the preamble to the interim rule took the position that SORNA applies of its own force, and then for the end of that paragraph, in light of these considerations, the Attorney General exercised his rulemaking authority under SORNA to specify that the requirements, that quote, the requirements of the Sex Offender Registration and Notification Act apply to all sex offenders, including sex offenders convicted of the offense for which the registration is required prior to the enactment of that act. So, here it's saying he specified, he understands this background, he still specified. Right. He determined there was good cause for receiving public comment after, above. I mean, isn't that the statement of having exercised a judgment? Right. He believes, wrongly, that he had good cause. I mean, yes, the interim rule did specify, but it did so in violation of the APA. Right. That's a separate question. But we were just talking about whether one could, if one were to agree with you, nonetheless find that the interim rule, once finalized, was a valid specification under the statute. That was the question the judge was asking. And I think you were looking for something in the final rule that might support that distinction. He does say that. Then we have to throw out the window this whole argument that before it's a valid specification, the AG has to think the AG has a decision to make. And if we're throwing that out the window, then we might as well be back in the final guidelines. I don't throw that out the window. Okay. Then if you don't throw that out the window, if you think the AG has to not just use the magic word specify, but actually has to make an independent judgment, as of the time of that final rule, the AG's position there, disagreeing with that Sixth Circuit decision of the U.S. Supreme Court, was this is not my call. So it still hasn't been made. Right. And that's, you know, Mr. Ross cannot, you know, his conviction is. . . I'm asking the wrong person, right? Yeah. I think there are no further questions. Thank you very much. Thank you. The case is submitted.
judges: Millett, Pillard, Williams